IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MONA WATSON CLARK, | CIVIL NO. 06-00544 SPK-LEK |
| Plaintiff | MEMORANDUM IN SUPPORT OF MOTION |
| v. | |
| INTERNAL REVENUE SERVICE, | |
| Defendant. | |

ImanageDB:753540.2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................... 1

II.     BACKGROUND ............................................................................. 1

     A.      Misappropriation of Royalties on Texas Oil and Gas Fields ............. 2

     B.      Discovery of a Potential Interest in Undisclosed Mississippi Property ........................................................................................ 4

     C.      Plaintiff Begins Investigating Tax Records of the Estate and Trust ................................................................................................ 4

     D.      Plaintiff's FOIA Requests ......................................................... 8

     E.      The Dismissal of Count 2 of the Complaint .................................... 10

     F.      The Proposed Amendments ......................................................... 11

III.    LEGAL STANDARD ....................................................................... 12

IV.     ARGUMENT .................................................................................. 12

     A.      Plaintiff Brings the Motion in Good Faith ..................................... 12

     B.      The Motion to Amend is Timely ................................................. 13

     C.      The Proposed Amendment Would Not Prejudice Defendant ............ 14

     D.      The Proposed Amendments Are Not Futile ................................... 14

V.      CONCLUSION ............................................................................... 16

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

<u>DCD Programs, Ltd. v. Leighton,</u>
    833 F.2d 183 (9th Cir. 1987)...................................................................... 12, 16

<u>DeNiro v. United States,</u>
    561 F.2d 653 (6th Cir. 1977)........................................................................ 15

<u>Gabrielson v. Montgomery Ward & Co.,</u>
    785 F.2d 762 (9th Cir. 1986)........................................................................ 12

<u>National Taxpayers Union v. United States,</u>
    68 F.3d 1428 (D.C. Cir. 1995) ..................................................................... 15

## <u>STATE CASES</u>

<u>Krajewski v. Blair,</u>
    297 A.2d 70 (Del. Ch. 1972).......................................................................... 15

<u>Marzella v. King,</u>
    389 A.2d 659 (Pa. 1978) ............................................................................... 15

<u>O'Flaherty v. Belgum,</u>
    115 Cal. App. 4th 1044 (Cal. Ct. App. 2004) ............................................... 15

## <u>STATUTES</u>

26 U.S.C. § 7413 ...................................................................................................... 10

26 U.S.C. § 7431 ...................................................................................................... 11

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

Plaintiff Mona Watson Clark ("***Plaintiff***") seeks leave from the Court to file her First Amended Complaint.  <u>See</u> Exs. "1" (proposed First Amended Complaint) and "2" (redline version) attached hereto.  The purpose of the proposed amendment is to re-assert a claim that was previously dismissed for lack of standing, as well as to add two Freedom of Information Act ("***FOIA***") claims that ripened after the Complaint was filed.  The addition of one of these FOIA claims would also require naming the Department of Justice, Tax Division ("***Tax Division***") as an additional party, as one of the new FOIA requests was directed at the Tax Division.  This Motion should be granted because of the settled rule that leave to amend should be granted with "extreme liberality," and because the proposed amendment is brought in good faith, is timely, will not prejudice Defendant, and would assert claims for relief that are viable on their face.

### II.    BACKGROUND

In this case, Plaintiff seeks access to information about the estate of her grand-uncle, Lewis M. Watson ("***Watson***"), that apparently has been hidden from the beneficiaries of the estate.  <u>See</u> Declaration of Mona Watson Clark ("***Clark Decl.***") at ¶ 2.  Plaintiff is one of the beneficiaries.  <u>See</u> <u>id.</u> a ¶ 3.  The information Plaintiff has uncovered so far suggests that money belonging to the beneficiaries

has been pocketed by the former executor of the estate, an entity affiliated with the executor, or some third party.  This lawsuit is part of an effort to discover the full extent of unauthorized activity concerning the Estate and Trust that has occurred.

### A.    Misappropriation of Royalties on Texas Oil and Gas Fields

Watson owned interests in oil and gas fields in Texas and elsewhere; the present-day value of such interests likely numbers in the millions.  See Clark Decl. at ¶ 4.  Watson's will instructed that the residue of the property in his estate (the "*Estate*") after specific bequests had been satisfied was to be conveyed to the trustee of the trust created by the will (the "*Trust*").  See Ex. "3" attached hereto at ¶ IV(C)(2)(b).  Upon the death of Watson's wife, the trustee of the Trust was to convey the residual property of the Estate to certain named beneficiaries, including Plaintiff.  See id.  After the death of Watson's wife, Arthur Wirtz ("*Wirtz*") became the successor executor of the Estate and sole trustee of the Trust.  See id. at ¶ VII.

Included in the residuary estate passing to the residuary beneficiaries were oil and gas properties in Ward County, Texas (the "*Ward County Property*").  See Clark Decl. at ¶ 8.  While some of the royalties from the production of oil and/or gas on the Ward County Property were paid directly to the beneficiaries (as is proper), some royalties ended up in Wirtz's pocket.  See id. at ¶ 9.  In 1979 and

1980, D.H. Hunt[1] drilled several oil-producing wells on the Ward County Property. See id. at ¶ 10. Mr. Hunt, whose uncle Lamar Hunt was a business associate of Wirtz, made the royalty payments to Wirtz as successor executor for the Estate rather than to the beneficiaries. When Plaintiff learned in 1981 that production on the Ward County Property was going on, she requested that Mr. Hunt pay the royalties to her and her co-beneficiaries or their successors. See id. at ¶ 11. The Hunt organization told Plaintiff that Mr. Hunt believed the Watson interest in the Ward County Property had been sold, so no payment was owed to Watson's beneficiaries. See id. Plaintiff, however, verified through a check of county records that Watson's beneficiaries still held a mineral interest in the Ward County Property. See id. Plaintiff then demanded that Wirtz pay the beneficiaries the royalties he had received from Mr. Hunt and that Mr. Hunt place future royalties in a suspense account until the issue with Wirtz could be resolved. See id.

Wirtz initially refused. See id. at ¶ 12. But when Plaintiff and her co-beneficiaries hired lawyers and threatened to sue, Wirtz turned over the royalty payments to Plaintiff and her co-beneficiaries or their successors in interest, and filed a final accounting on the Estate. See id.; Ex. "4" attached hereto. The final accounting stated, among other things:

---

[1] D.H. Hunt is a member of the Hunt oil dynasty. D.H. Hunt's father was William Herbert Hunt, who, with his brother Nelson Bunker Hunt, gained notoriety for trying to corner the silver market in 1980.

- Wirtz received $143,526.36 in royalties in December 1980;

- Wirtz received $52,281.77 in royalties between March and August 1981;

- The Estate received investment interest of $21,244.95 in CDs; and

- Wirtz made disbursements to the IRS of $64,800 in 1980 and $27,127 in 1981 for income taxes on the Estate.

See Ex. "4" at 1. Watson's probate case was closed on November 1, 1982. See id. at ¶ 14.

## B.    Discovery of a Potential Interest in Undisclosed Mississippi Property

In December 2003, Pursue Energy Corporation ("*Pursue*") sent Plaintiff's mother, Virginia Fairfield Clark (also a residuary beneficiary under the Trust), a proposed settlement agreement between Pursue and owners of mineral interests in real property in Mississippi. See id. at ¶ 15. The proposed settlement agreement was part of Chapter 11 bankruptcy proceedings initiated by Pursue. See id. Pursue attempted to settle Virginia Fairfield Clark's mineral interest without revealing the nature of the mineral interest. See id. This alerted Plaintiff and her co-beneficiaries that, unbeknownst to them, the Estate might own mineral interests in Mississippi. See id. at ¶ 16. Accordingly, the beneficiaries opted out of the reorganization plan adopted by the bankruptcy court on October 27, 2005, and pressed claims for mineral interests against Pursue. See id. at ¶ 17.

## C.    Plaintiff Begins Investigating Tax Records of the Estate and Trust

Prompted by the discovery of property interests and income-producing

activity of the Estate that were never disclosed to the beneficiaries, Plaintiff began investigating the Estate's tax history.  See id. at ¶ 18.  Plaintiff requested from the IRS copies of the tax returns filed for the Estate and Trust for 1983-1990.  See id. at ¶ 19.  The IRS responded that no tax returns existed for those years.  See id. Plaintiff then requested the transcripts of the tax returns for the Estate and Trust from 1979-1990 from the IRS Returns and Income Verification Services ("*RAIVS*") units in Cincinnati, Ohio and Kansas City, Missouri.  See id. at ¶ 20. Both RAIV units responded that there was no record of any tax return being filed by the Estate or Trust for the years specified.  See id.

Nevertheless, in a September 16, 2005 conversation with Sherry Hargis of the Kansas City RAIVS unit, Plaintiff determined that Ms. Hargis was looking at a tax transcript even as she represented that no documents exist.  See id. at ¶ 21. When asked by Plaintiff, Ms. Hargis confirmed that she was looking at a transcript for the Estate for tax year 1981, but stated that the transcript contained only one line showing the total tax liability of the Estate in 1981.  See id.  The transcript actually contained more than a single line.  See id.  Plaintiff received a faxed copy of the 1981 transcript from an IRS employee at the Kansas City office on September 26, 2005.  See id. at ¶ 22; Ex. "5A" attached hereto.  This version of the transcript did contain a single entry showing the Estate's tax liability of $22,794.91 for tax year 1981.  See Ex. "5A."  But three hours later, another IRS employee at

the Kansas City office faxed Plaintiff another version of the transcript containing 21 lines and a legend of transaction codes. See Clark Decl. at ¶ 22; Ex. "5B" attached hereto.

On October 5, 2005, the Kansas City Disclosure Unit faxed Plaintiff certified transcripts for the 1980 and 1982 years and subsequently mailed transcripts for the 1981, 1980, and 1982 years. See Exs. "5C," "6" and "7" attached hereto. Plaintiff was told by one IRS Disclosure Officer that the actual tax returns had been destroyed. See Clark Decl. at ¶ 24.

The certified transcripts listed document locator numbers ("*DLNs*") for certain transactions which pertain to various payments and other actions on the Estate. See id. at ¶ 25. Thus, Plaintiff asked IRS personnel to search for certain documents according to their DLNs. See id. Plaintiff was informed that a thorough search had been performed and all documents pertaining to the Estate had been destroyed by the fourth month of 1990. See id. This contradicted information Plaintiff was given, however, as the last transaction (by chronology) listed on the certified transcript for tax year 1981 was not posted to the Estate's account until May 1990—*after* the records were allegedly destroyed. See Ex. "5." When Plaintiff informed the IRS of this, another search was performed. See Clark Decl. at ¶ 26.

On November 7, 2005, the IRS informed Plaintiff that it located a Form

3413 ("Transcription List (Account Transfer-in)") for the Estate and that Plaintiff could request the document through the Taxpayer Advocate's office in Kansas City.  See id. at ¶ 27.  The next day, Plaintiff requested that the Taxpayer Advocate's Office provide the Form 3413 and other documents identified by the DLNs on the certified transcripts.  See id.  Plaintiff received from a taxpayer advocate a one-page transcript, but not the Form 3413 which would have provided more detailed information on the account activity.  See id. at ¶ 28.  Subsequently, Plaintiff received from the taxpayer advocate a Form 5248 (a "Transfer Request') with the same one-page transcript attached.  See Ex. "8" attached hereto.  The transcript contains references to (a) two separate examinations being performed on the Estate and (b) two installment payments each in the amount of $27,127.  The references to the examinations and installment payments had been ***redacted from the certified transcripts earlier given to Plaintiff***.  See Clark Decl. at ¶ 29.  Moreover, although Plaintiff has been advised by IRS personnel that a total of 15 pages of documents are attached to the Form 3413 she requested (designated by the DLN 36252-349-30200-9), the IRS has given her just two pages.  See id. at ¶ 30.

The documents requested by Plaintiff are important because they can detail activity of the Estate that has been concealed from the beneficiaries.  See id. at ¶ 31.  What little information Plaintiff has been able to collect already suggests that improper conduct occurred.  The installment payments of $27,127 indicate that the

Estate received substantial income of which Plaintiff was never informed. The transcripts indicate that the Estate held assets capable of generating income of more than $108,000 in one year over and above the amounts disclosed by Wirtz in his final accounting. Plaintiff was told that all that Wirtz had done with the money he received as executor of the Estate was invest them in CDs; no other business activity was mentioned. See id. at ¶ 13. Moreover, based on the dates listed on the transcript obtained through the taxpayer advocate, one of the examinations of the Estate occurred after Wirtz died in 1983. As none of the beneficiaries or their successors were contacted concerning the examination, and no successor executor was appointed for the Estate at the time of the examination, the IRS was likely dealing with an individual who was not authorized to receive information on the Estate or to represent the Estate.

### D.    <u>Plaintiff's FOIA Requests</u>

Plaintiff submitted a FOIA request to IRS Disclosure Office 4 in Chicago, Illinois on March 7, 2006 ("***First FOIA Request***"), and another on June 1, 2006 ("***Second FOIA Request***"). <u>See</u> Exs. "9" and "10" attached hereto. These requests are the subject of Count I of the original Complaint. Together, the First and Second FOIA requests sought tax records concerning the Estate and Trust, including *inter alia*:

    a.    Transcripts for 1979-1990;
    b.    Copies of certain documents identified by DLNs;

c.    Files pertaining to a proceeding identified by a DLN;

d.    Documents identifying the individual purporting to represent the Estate and/or Trust in IRS matters between 1979-1990 and all documents in which the individual or entity purported to act on behalf of the Estate; and

e.    Files on all examinations, judicial or administrative hearings, opinions or advisory letters regarding the Estate and Trust.

See id.  The IRS denied both FOIA requests.  See Exs. "11" and "12" attached hereto.  Thus, on October 4, 2006, Plaintiff filed the Complaint in this action asserting claims under FOIA with respect to the First and Second FOIA Requests. See Complaint, Count 1.

After the Complaint was filed, Plaintiff submitted two additional FOIA requests.  On October 28, 2006, Plaintiff submitted a FOIA Request to IRS Disclosure Office 8 in Nashville, Tennessee for (a) the document identifying the individual who prepared the IRS Form 5248 attached to the request and (b) a complete copy of the documents attached the Form 5248 ("*Third FOIA Request*"). See Ex. "13" attached hereto.  On December 6, 2006, the IRS responded that no responsive documents could be located.  See Ex. "14" attached hereto.  Plaintiff administratively appealed the denial on December 29, 2006.  See Ex. "15" attached hereto.  The appeal was denied on February 2, 2007.  See Ex. "16" attached hereto.

On November 11, 2006, Plaintiff submitted a FOIA request to the Tax Division of the U.S. Department of Justice for (a) all files and records pertaining to the Estate, Trust, or the estate of Wirtz, including but not limited to pending and

terminated civil and criminal matters and litigation handled by the Tax Division; and (b) certain information provided from the Tax Division's Case Management System ("*Fourth FOIA Request*"). See Ex. "17" attached hereto. On November 30, 2006, the Tax Division responded that there were no responsive records as to the estate of Wirtz. See Ex. "18" attached hereto. On December 7, 2006, the Tax Division responded that there were no responsive records as to the Watson Estate. See Ex. "19" attached hereto. Plaintiff administratively appealed the denial on January 3, 2007. See Ex. "20" attached hereto. The appeal was denied on February 15, 2007. See Ex. "21" attached hereto. Plaintiff sought reconsideration of the appeal decision on March 12, 2007, which was denied on April 2, 2007. See Exs. "22" and "23" attached hereto.

### E.   The Dismissal of Count 2 of the Complaint

Count 2 of the Complaint in this case asserted a cause of action against the IRS under 26 U.S.C. § 7413 for disclosure of confidential tax information to unauthorized third parties. The IRS moved to dismiss Count 2 on December 11, 2006. The district court granted the motion on March 1, 2007. See Ex. "24" attached hereto. The ruling was based on the language of § 7431, which states, in pertinent part:

> If any officer or employee of the United States knowingly, or by reason of negligence . . . discloses any return or return information *with respect to a taxpayer* in violation of any provision of section

> 6103, *such taxpayer* may bring a civil action for damages against the
> United States in a district court of the United States.

26 U.S.C. § 7431(a)(1) (emphasis added).  The court determined that Plaintiff's

status as a beneficiary of the taxpayer (*i.e.*, the Estate or Trust) as opposed to the

actual taxpayer did not confer her standing to enforce § 7431.

After Count 2 was dismissed, Plaintiff took steps to perfect her standing to

bring the § 7431 claim on behalf of the Estate.  Plaintiff initiated proceedings in

the Circuit Court of Cook County, Illinois, to be appointed as the successor

executor of the Estate.  See Clark Decl. at ¶ 47.  On July 12, 2007, the Circuit

Court of Cook County, Illinois, County Department, Probate Division issued

Letters of Office appointing Plaintiff as the successor executor of the Estate

("*Letters of Office*").  See Ex. "25" attached hereto.  Plaintiff received the Letters

of Office on August 8, 2007.  See Clark Decl. at ¶ 49.

### F.    <u>The Proposed Amendments</u>

By this motion, Plaintiff seeks leave to amend the Complaint to:

- Re-assert the 26 U.S.C. § 7431 claim now that Plaintiff has cured the
  standing defect that led to dismissal of the claim;

- Assert claims under FOIA with respect to the Third and Fourth FOIA
  Requests; and

- Add the Tax Division as a Defendant, as it was the agency to which the
  Fourth FOIA Request was submitted.

Plaintiff also proposes to make minor stylistic changes to the Complaint such as

splitting the FOIA claims into individual counts and streamlining the text of the allegations to improve readability. Such stylistic changes should not affect the substance of the original Complaint.

## III.  **LEGAL STANDARD**

Rule 15(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires* . . . ." Fed. R. Civ. P. 15(a) (emphasis added). The Ninth Circuit has noted "on several occasions . . . that the 'Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), Fed. R. Civ. P., by freely granting leave to amend when justice so requires.'" <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 186 (9th Cir. 1987) (brackets omitted; quoting <u>Gabrielson v. Montgomery Ward & Co.</u>, 785 F.2d 762, 765 (9th Cir. 1986)). Thus, the policy of favoring amendments to pleadings "should be applied with 'extreme liberality.'" <u>Id.</u> The four factors commonly used to determine the propriety of a motion for leave to amend are: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of amendment. <u>Id.</u>

## IV.  **ARGUMENT**

### A.  **Plaintiff Brings the Motion in Good Faith**

Plaintiff brings the instant Motion in good faith and not for an improper purpose, such as delay. Indeed, it is in Plaintiff's interest to resolve this case as

expeditiously as possible so that she may determine if unauthorized activity concerning the Estate or Trust occurred. The proposed amendment legitimately seeks to vitiate the standing concerns surrounding the § 7431 claim, and to assert claims for later-filed FOIA requests that are related to the subject matter of this action. Thus, the first factor weighs in favor of allowing amendment.

## B.     The Motion to Amend is Timely

Plaintiff did not delay in filing this Motion. Plaintiff received the Letters of Office appointing her successor executor of the Estate on August 8, 2007. The standing defect that caused the dismissal of Count 2 remained until Plaintiff was appointed successor executor of the Estate. Plaintiff filed this motion a mere 8 days after receiving the Letters of Office.

As for the proposed claims relating to the Third and Fourth FOIA Requests, they were not administratively exhausted until around the time the district court dismissed Count 2 or thereafter. Rather than amending the Complaint multiple times, Plaintiff chose to add the new FOIA claims at the same time she re-asserted the § 7413 claim.[2] However, as noted above, the § 7413 claim could not be re-asserted until Plaintiff received the Letters of Office.

---

[2] If Plaintiff is not allowed to amend the Complaint to add the new FOIA claims, she intends on asserting the claims in a separate action. Plaintiff respectfully submits that this alternative approach involves piecemeal litigation on the same or related issues. Amendment is thus the more efficient, and preferable, approach.

In sum, Plaintiff acted expeditiously in filing this Motion. The second factor therefore weighs in Plaintiff's favor.

### C.     The Proposed Amendment Would Not Prejudice Defendant

Defendant will not be prejudiced by the proposed amendment of the Complaint. Defendant has conducted no discovery in this case. Indeed, Defendant has done nothing in this case other than to file a motion to dismiss Count 2. In any event, the discovery deadline is not until February 1, 2008, which leaves ample time for discovery of the new claims and allegations asserted in the proposed amended complaint, if necessary.

Plaintiff further notes that Defendant has been on notice of the § 7431 claim from the inception of this case. The proposed amendment asserts a § 7431 claim for no other reason than the fact that it was earlier dismissed for lacking of standing at Defendant's request. Therefore, Defendant could not possibly be prejudiced by the amendment of the Complaint to include the § 7431 claim.

### D.     The Proposed Amendments Are Not Futile

The additional claims Plaintiff proposes to append to the Complaint are viable on their face and thus not futile. The standing issue with respect to the § 7431 claim has been resolved. When the district court first addressed the claim, it reasoned that the claim could only be brought by the "taxpayer." Since the taxpayer is the Estate, only an individual or entity qualified to bring claims on

behalf of the Estate has standing to assert the claim.

Plaintiff currently satisfies the requirements of the rule articulated by the district court.  Rather than bringing the claim as a beneficiary of the Estate, Plaintiff is bringing the claim in her capacity as successor executor of the Estate.  It is well-settled that an executor is the proper party to assert claims of a decedent's estate.  See, e.g., DeNiro v. United States, 561 F.2d 653, 657 (6th Cir. 1977) (holding that three brothers were deemed "co-executors" of estate for purposes of estate tax requirements, and thus, they had the right to sue for a tax refund on behalf of the estate); O'Flaherty v. Belgum, 115 Cal. App. 4th 1044, 1095 (Cal. Ct. App. 2004) ("Thus as to claims held by an estate or trust, the executor, administrator or trustee is the real party in interest.  Such fiduciary has the right to sue[.]" (alterations in original; quoting Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial ¶ 2:6, at 2-2 (2003)); Marzella v. King, 389 A.2d 659, 660 (Pa. 1978) ("It is well settled that all actions that survive a decedent must be brought by or against the personal representative."); Krajewski v. Blair, 297 A.2d 70, 73 (Del. Ch. 1972) (noting that executor or administrator is the proper party to assert claims in behalf of a decedent's estate); see also National Taxpayers Union v. United States, 68 F.3d 1428, 1435 (D.C. Cir. 1995) (holding that association had representational standing to bring constitutional challenge against statute raising maximum federal estate and gift tax rates where its members included at least one

executor of an estate that would have been affected by the tax increase).

There is no reason to believe that the new FOIA claims are futile.   A motion to amend a complaint "is to be liberally granted where from the underlying facts or circumstances, the plaintiff may be able to state a claim."   DCD Programs, 833 F.2d 183, 186 (9th Cir. 1987).  The allegations supporting the proposed new FOIA claims clearly meet this standard.

Accordingly, the fourth and final factor weighs in favor of granting the Motion.

## V.   **CONCLUSION**

For the foregoing reasons, this Motion should be granted.

DATED:  Honolulu, Hawaii, August 16, 2007.

CADES SCHUTTE LLP


/s/ Elijah Yip
JEFFREY S. PORTNOY
ELIJAH YIP
Attorneys for Plaintiff
MONA WATSON CLARK