**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

| | |
|---|---|
| MONA WATSON CLARK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>INTERNAL REVENUE SERVICE, )<br>UNITED STATES OF AMERICA )<br>DEPARTMENT OF JUSTICE, )<br>)<br>Defendants. )<br>) | No. 06-CV-00544<br><br>Hon. Marvin E. Aspen |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Court Judge:

Plaintiff Mona Watson Clark filed two motions for sanctions against Defendants Internal Revenue Service and Department of Justice (Dkt. Nos. 253 & 273). Although Clark has not requested any specific remedy, she generally asks that we exercise our inherent authority to sanction Defendants for their allegedly recalcitrant conduct during the course of this litigation. As set forth below, we deny the motions.

**BACKGROUND**

We assume familiarity with the factual background of this case, as described in detail in our September 14, 2010 summary judgment opinion. (*See* Dkt. No. 225, 9/14/10 Op.) The recently-concluded trial[1] in this matter focused on Clark's claim under 26 U.S.C. § 7431, which

---

[1] We presided over the bench trial from December 13 through December 16, 2010. Our findings of fact and conclusions of law will follow in several weeks, after the parties have briefed various evidentiary objections and post-trial motions, and filed their post-trial briefs.

required her to prove that: (1) Defendants made a disclosure of confidential taxpayer information about the Estate of Lewis M. Watson, Clark's great-uncle; (2) the disclosure was unauthorized in violation of 26 U.S.C. § 6103; and (3) the disclosure was made negligently or willfully. 26 U.S.C. § 7431(a)(1); *see, e.g.*, *Aloe Vera of Am., Inc. v. U.S.*, 580 F.3d 867, 870–71 (9th Cir. 2009); *Siddiqui v. U.S.*, 359 F.3d 1200, 1202 (9th Cir. 2004). Simply put, Clark asserts that Defendants' evasive, misleading and defiant conduct throughout discovery prevented her from obtaining information about the alleged unauthorized disclosure and thus hindered her ability to prepare for trial. In the present motions, Clark challenges a series of searches conducted by Defendants and—given the often technical and fact-specific nature of these issues—we shall address each in turn below.

## ANALYSIS

**I.      First Motion for Sanctions (Dkt. No. 253)**

In her first motion for sanctions, Clark contends that Defendants destroyed relevant evidence, which existed years ago and now appears to be lost. (1st Mem. at 4–6.) Clark seeks an unspecified remedy for this alleged spoliation of evidence.

"In general, a party has a duty to preserve evidence when it knows or reasonably should know the evidence is potentially relevant to litigation and when the destruction of that evidence prejudices the opposing party." *Durham v. Cty. of Maui*, No. 08 C 00342, 2010 WL 3528991, at *4 (D. Haw. Sept. 10, 2010) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). Where this duty has been violated, a court can impose one of several sanctions and may: "(1) exclude evidence, (2) admit evidence of the circumstances of the spoliation, (3) instruct the jury that is may infer that the spoiled evidence would have been unfavorable to

the responsible party, or even (4) dismiss claims." *Durham*, 2010 WL 3528991, at *5; *In re Napster*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (explaining three available sanctions for spoliation of evidence: an adverse inference instruction, exclusion of witnesses, or dismissal); *see also Leon*, 464 F.3d at 958–61 (discussing the district court's dismissal of plaintiff's case as a sanction, as well as its imposition of an attorneys' fees award). Although no showing of bad faith is required,[2] sanctions are not warranted unless the non-moving party destroyed the evidence despite knowledge of its relevance and thereby prejudiced the movant. *Durham*, 2010 WL 3528991, at *4–5; *In re Napster*, 462 F. Supp. 2d at 1066.

    A.    **NUMIDENT Prints and TAS Log**

In response to this motion, and despite their objections thereto, Defendants provided Clark with certain NUMIDENT prints she desired. (1st Resp. at 8–9; Keys 10/28/10 Decl. ¶ 18 & Ex. G.[3]) Defendants also provided Clark with the Taxpayer Advocate Service ("TAS") case log information for TAS Case File #3549073. (1st Resp. at 10–11; Keys 10/28/10 Decl. ¶ 24 & Ex. I.) Clark does not contest the sufficiency of this material. Accordingly, these first two disputes are now moot.

---

[2] To be clear, a finding of bad faith is required to impose the sanction of dismissal. *Leon*, 464 F.3d at 958. However, Clark has not requested a dismissal sanction, and in fact, expressly states that she "does not seek a drastic sanction." (1st Reply at 6.) Thus, bad faith is not at issue for Clark's first sanctions motion.

[3] The exhibits attached to Mary Ellen Keys' recent declaration do not seem to match her references to them. Thus, although she states that the NUMIDENT prints are attached as Exhibit I, they appear as Exhibit G. (*See* Keys 10/28/10 Decl. ¶ 18 & Exs. G, I.)

### B. SUMRY Document

Based on a November 28, 2005 notation by an IRS employee in the TAS log, Clark next contends that some sort of "SUMRY" information existed about the Estate but has been either withheld or destroyed. (1st Mem. at 6; *see* Clark 10/03/10 Decl., Ex. F at 4.) Clark does not explain what this material might be, or how it might be relevant. (1st Mem. at 6.) Nor does the TAS notation itself offer any clues. (*See* Clark 10/03/10 Decl., Ex. F at 4; *see also* Keys 10/28/10 Decl., Ex. H.) Defendants also have been unable to decipher the notation, whose author has since retired. (1st Resp., Keys 10/28/10 Decl. ¶¶ 19–21.) On the record before us, there is simply no indication that Defendants withheld or destroyed any information, even assuming that the SUMRY reference correlates to any specific information in an accessible format. There is also no indication that this information would have been relevant to Clark's pending claim. Sanctions are inappropriate under these circumstances.

We also agree with Defendants that if Clark wanted to vet this issue, she could have served some sort of discovery after receiving the TAS log in October 2009. Indeed, discovery continued for a few months thereafter into early 2010. (*See* Dkt. No. 188, Judge Kobayashi 1/20/10 order (extending summary judgment deadline to accommodate ongoing discovery, which had been set to close on January 15, 2010).) Yet, in her reply, Clark does not dispute Defendants' assertion that she never sought an explanation of this SUMRY notation during discovery. (*See* 1st Reply at 2–6 (focusing on the disputed Form 3413); 1st Resp. at 9; *see also* 1st Mem., Shigekane 10/18/10 Decl., Ex. D, Shigekane 6/16/10 Ltr. to Klimas at 2 (requesting other information from the TAS log but not mentioning the SUMRY notation).) We obviously cannot sanction Defendants for failing to provide information that Clark never requested.

C. **Form 3413**

Clark's primary argument on this first motion is that Defendants withheld and/or destroyed a completed Form 3413 related to the Estate. (1st Mem. at 2–4.) As with the SUMRY notation, Clark claims that she was not aware of the Form 3413 until she received the TAS log in October 2009.[4] (*Id.* at 3.) She contends that based on the TAS log, Defendants possessed the Form 3413 and were aware of her potential lawsuit, as of late 2005. (*Id.* at 4.) Indeed, entries from the TAS log explicitly state that a Form 3413 was located, bearing Document Locator Number ("DLN") 36252-349-30200-9, and that the case file was needed "for pending litigation." (*Id.*; *see also* Clark 10/03/10 Decl., Exs. F at 3 & G.) Despite allegedly having the document, however, Defendants refused to release it and claim that it was destroyed. (1st Mem. at 4–5.)

In their response, however, Defendants convincingly explain that the references to a Form 3413 in the TAS log and related documents were simply mistakes, stemming from one IRS employee's confusion. (1st Resp. at 3–7.) According to Defendants, IRS employee Garry Johnson erroneously stated that he received a Form 3413 from the Federal Records Center, when in fact he had received a Form 5248. (1st Resp. at 4–6.) His confusion as to the forms was evident at his deposition, where he nonetheless ultimately testified that he "was told this was a Form 3413, but a Form 5248 was provided" to Clark. (*Id*. & Ex. B, Johnson Dep. at 25–26.) Having received this information from Johnson, Daniel Bennett, another IRS employee,

---

[4] This assertion is questionable, given that Clark also states that she received an email from Daniel Bennett informing her of the existence of the Form 3413 on November 7, 2005—more than four years before she obtained the TAS log. (1st Mem., Clark 10/18/10 Decl. ¶ 2 & Ex. G.) Indeed, she sought the Form 3413 during discovery. (1st Mem., Ex. H, Defs.' Supp. Resp. to Pl.'s 1st Doc. Request ¶ 59.) We assume that, in her brief, Clark meant simply that she was not aware of the TAS log until October 2009, not the Form 3413 itself.

informed Clark that Johnson had a Form 3413 with DLN 36252-349-30200-9, which she could request through TAS.  (1st Mem. at 5 & Ex. G, 11/07/05 Bennett email to Clark.)  In referring to the document as a Form 3413, Bennett thus passed on Johnson's misinformation to Clark, and others.  (*See* 1st Resp. at 4–5 & Ex. A, Bennett Dep. at 48–49 ("I only know based on the conversation that I was having with Garry Johnson on the document and form number that he had located.")

In fact, there is no dispute that the IRS provided Clark with a Form 5248 bearing DLN 36252-349-30200-9[5] prior to her lawsuit.  (*See* 1st Resp., Keys 10/28/10 Decl. ¶ 8 & Ex. C, Form 5248.)  As noted in Defendants' response brief, several people—including Johnson—testified that the Form 5248 was the *only* form responsive to the DLN searches conducted at that time.  (*See, e.g.*, 1st Resp., Ex. B, Johnson Dep. at 23–24.)  Additionally, IRS declarant Mary Ellen Keys concluded that "there is no evidence that any such Form 3413 was located."  (1st Resp., Keys 10/28/10 Decl. ¶ 5.)  Finally, Defendants contend that any Form 3413 that might have existed would have been destroyed pursuant to record retention schedules by 1995 and thus, could not have been available in 2005.  (1st Resp. at 6–7.)

Quite to the contrary, Clark insists that the Form 3413 did exist and characterizes Defendants' claim that it was destroyed years ago as "demonstrably untrue."  (1st Mem. at 6.) The record before us simply does not support these conclusions.  Rather, it substantiates Defendants' contention that the document located was actually Form 5248, not Form 3413.

---

[5] That being said, the existence of a Form 5248 with this particular DLN does not necessarily rule out the existence of another form with that DLN.

-6-

Though unsatisfactory to Clark, this explanation accounts for the pertinent witness testimony,[6] the existence of the Form 5248 bearing the correct DLN, Defendants' inability to locate a Form 3413, and their assertion that such a form would have been destroyed in the ordinary course of business. Indeed, this explanation is entirely logical, consistent with the evidence before us, and far more persuasive than Clark's unproven spoliation theory. Without further evidence of the alleged spoliation or its prejudice to Clark, we deny the motion.

## II.     Second Motion for Sanctions

In her second motion, brought pursuant to Rule 26(g) as well as our inherent authority, Clark identifies a number of discovery abuses allegedly committed by Defendants. (2d Mot. at 2; *see* 2d Mem. at 4–14.) She seeks both sanctions and "appropriate follow-up discovery." (2d Mem. at 15.) Before addressing the merits of the motion, we will first resolve a few preliminary issues.

### A.     Compliance with Local Rule 37.1

We "will not entertain any motion pursuant to [Rules] 26 through 37 . . . unless counsel have previously conferred . . . concerning all disputed issues, in a good faith effort to limit the disputed issues and, if possible, eliminate the necessity for a motion." L.R. 37.1(a). This rule on its face thus applies to Clark's request for sanctions pursuant to Rule 26(g). Local Rule 37.1(b) also requires a movant to certify compliance with the meet-and-confer prerequisite. L.R. 37.1(b). According to Defendants, Clark's attorney neglected to confer with them about the majority of the issues presented in this motion. (*See* 2d Resp. at 24–25.) Moreover, the

---

[6] To the extent that Clark contends she could not adequately depose witnesses about the Form 3413 in 2008, she could have requested re-deposition or sought further discovery on this issue after receiving the TAS log in October 2009.

necessary certification is not attached to Clark's motion. L.R. 37.1(b). Accordingly, this motion—to the extent brought pursuant to Rule 26(g)—is denied. *See, e.g.*, *Haw. Disability Rights Ctr. v. Cheung*, No. 06 C 00605, 2007 WL 2874842, at *3–4 (D. Haw. Sept. 27, 2007). We continue to evaluate this motion, however, as it also seeks relief under our inherent authority.[7]

**B.  Timeliness**

In the second motion, filed November 16, 2010, Clark attacks several of Defendants' discovery responses, contending that they were incomplete, incorrect, misleading, and/or late. (2d Mem. at 4–14.) According to Defendants, Clark unreasonably delayed raising each of the eight issues discussed in her motion.[8] (2d Resp. at 3–5.) Defendants argue that Clark's motion is untimely because she is contesting discovery issues that arose weeks, if not months, ago.[9] (2d Resp. at 3–5.)

While we found no authority setting specific time limits for the filing of a motion for sanctions pursuant to our inherent authority, it is generally well-established that "unreasonable delay may render . . . a [sanctions] motion untimely." *Brown v. Hawaii*, No. 07 C 00556, 2009 WL 3365850, at *2 (D. Haw. Oct. 19, 2009) (quoting *Long v. Howard Univ.*, 561 F. Supp. 2d 85,

---

[7] We do not assume that the requirements of the Local Rule apply to motions seeking sanctions under our inherent authority.

[8] We will adopt Defendants' reference to these issues as Items 1 through 8.

[9] Defendants treat the pending motion as a "discovery-related motion," which should have been filed prior to the close of discovery. (2d Resp. at 3.) Clark might deem it a sanctions—not discovery—motion, as suggested by her reply brief on the first sanctions motion. (*See* 1st Reply at 5.) Of course, such a position would be undermined by her explicit request for further discovery. (2nd Mem. at 15.) Regardless, we find the distinction immaterial in this instance. We treat the motion as a request for sanctions.

91 (D.D.C. 2008)); *see also Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994). "The timeliness of a motion for sanctions depends on such factors as when the movant learned of the discovery violation, how long [she] waited before bringing it to the court's attention, and whether discovery has been completed." *Long*, 561 F. Supp. 2d at 91 (evaluating a Rule 37 sanctions motion). Keeping these factors in mind, we turn to Clark's claims.

        *1.     Items 1 and 2*

Items 1 and 2 concern Defendants' running and disclosure of certain NAME searches. (2d Mem. at 4–8.) Clark has repeatedly disputed the sufficiency of these searches and again expresses concern about the search results disclosed to her on October 13, 2010. (*Id.*) Clark filed this motion a relatively short time (just a few weeks) after viewing the search results, and we do not deem this brief delay unreasonable.

        *2.     Items 3 and 5*

In Item 3, Clark claims that she was not shown the original microfilm of the so-called 1981 transcript. (2d Mem. at 8–9.) On October 21, 2009, Magistrate Judge Kobayashi ordered Defendants to allow Clark to view the original microfilm transcript. (*Id.* at 9; *see also* 10/21/09 Order, Dkt. No. 165 at 2.) In January 2010, Clark traveled to Kansas City, Missouri to review the microfilm. (2d Mem. at 9.) Defendants allegedly provided a re-imaged, redacted version, however, and failed to disclose the original microfilm. (*Id.*)

Clark also complains of another situation occurring January 2010. (*Id.* at 10–11.) In Item 5, Clark states that based on her review of NAMEE search results at that time, she discovered that the matches concerned her great-uncle's Trust, rather than the Estate. (*Id.*) This realization contradicted the earlier declaration testimony of Mary Ellen Keys, which had been

submitted in November 2009 when Defendants' appealed Judge Kobayashi's October 21, 2009 discovery order before Judge King. (*Id.*; *see* Keys 11/6/09 Decl. ¶ 18, Dkt. No. 174-7.) Keys had stated that the more than 65,000 results stemmed from a NAMEE search for the Estate, not the Trust. Clark argues that Keys thus misled not only her, but also the Court.[10]

Despite learning of these alleged inconsistencies in January 2010, Clark neglected to file a motion until November 16, 2010—ten months later, less than a month before trial, and months after discovery closed. We find this unexplained delay to be unreasonable, and the motion for sanctions as to Items 3 and 5 is untimely.

### 3. *Items 6 and 7*

We reach a similar conclusion with respect to Items 6 and 7. In Item 6, Clark claims she was misled by Defendants' initial claim that they could not locate the original Form 5248, when they had it all along. (2d Mem. at 11–12.) She decries their assertions that the document had been "lost" until August 2009. (*Id.*) Regardless, she undisputedly received the document no later than August 2009, and had in fact received a copy of it prior to filing this lawsuit in 2006. (*See, e.g.*, Keys 11/22/10 Decl. ¶¶ 39; Keys 2/17/10 Decl. ¶ 15, Dkt. No. 199-3.)

As to Item 7, Clark contends that she was not provided with a "full, clean, unmarked copy of the [1981] transcript until it was attached to a declaration of Mary Ellen Keys dated 3/23/09." (2d Mem. at 12; *see also* Keys 3/23/09 Decl. ¶¶ 7–8 & Exs. C–D, Dkt. No. 132.) She argues that this failing prevented her from questioning Defendants' Rule 30(b)(6) deponent, Grant Kawamoto, about certain notations that appear on the then-available transcript but are

---

[10] Of course, Judge King denied Defendants' appeal and affirmed Judge Kobayashi's discovery order, so the Keys declaration does not appear to have prejudiced Clark.

missing from the unmarked copy. (*Id.*) As Clark concedes, however, she received the unmarked copy in 2009—presumably on May 28, 2009 when Defendants filed this particular declaration. (*See* Keys 3/23/09 Decl., Dkt. No. 132.)

Clarks offers no explanation for why she waited more than a year to raise Items 6 and 7, and we find no obvious excuse in the record before us. Discovery was ongoing when Clark became aware of these purported problems and was later extended through at least January 2010; she could have issued additional discovery on either Items 6 or 7 during that period. She could have requested re-deposition of Kawamoto to discuss the unmarked transcript. Now, however, discovery has long since closed. Clark's delay of well over a year to seek additional discovery and sanctions on these alleged shortcomings is unreasonable.

### 4. *Items 4 and 8*

Items 4 and 8 focus on discrepancies in certain testimony and search results proferred by Defendants. (2d Mem. at 9–10, 13–14.) Clark learned of these alleged discovery violations in May 2010. (*Id.*) Although Defendants contend that this six-month delay is unreasonable, we are not convinced. Clark's delay is questionable, but we will address these issues below, out of an abundance of caution.

### C. Merits

In accordance with our above rulings, we will entertain the merits of Clark's second sanctions motion as to Items 1, 2, 4 and 8. Clark seeks sanctions for Defendants' alleged discovery violations, as well as additional discovery.

"All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." *F.J. Hanshaw Enters., Inc.*

*v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001); *see Chambers v. Nasco, Inc.*, 501 U.S. 32, 43–46, 111 S. Ct. 2123, 2132–33 (1991); *Fink v. Gomez*, 239 F.3d 989, 991–92 (9th Cir. 2001); *Erum v. Cty. of Kauai*, No. 08 C 00113, 2008 WL 2598138, at *4 (D. Haw. June 30, 2008). With this power, courts may "punish conduct both within their confines and beyond," and can thus "address the full range of litigation abuses." *F.J. Hanshaw Enters., Inc.*, 244 F.3d at 1136; *see Fink*, 239 F.3d at 991–92; *Erum*, 2008 WL 2598138, at *4. In exercising their discretion to impose sanctions, courts may vacate a prior order, "dismiss cases in their entirety, bar witnesses, award attorneys' fees and assess fines." *F.J. Hanshaw Enters., Inc.*, 244 F.3d at 1l36; *Chambers*, 501 U.S. at 44, 111 S. Ct. at 2132; *see Fink*, 239 F.3d at 991–92; *Erum*, 2008 WL 2598138, at *4.

Because of the potency of this authority, however, "inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44, 111 S. Ct. at 2132; *F.J. Hanshaw Enters., Inc.*, 244 F.3d at 1137; *Erum*, 2008 WL 2598138, at *4. Accordingly, when wielding this power, a court must find that a party acted in bad faith, or other "conduct tantamount to bad faith," before issuing sanctions. *Fink*, 239 F.3d at 991–92; *see Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006); *Erum*, 2008 WL 2598138, at *4. "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 991–92; *Erum*, 2008 WL 2598138, at *4–5.

      *1.*    *Item 4*

In Item 4, Clark identifies a discrepancy between two of Defendants' witnesses, regarding the availability of the BMF Accounts Register on microfilm. (2d Mem. at 9–10.)

Putting aside Defendants' reasonable and well-supported explanation (2d Resp. at 16–17), Clark has not articulated how such a discrepancy might be sanctionable conduct. She simply recites a few lines of testimony, with no argument whatsoever as to how the existence of potentially contradictory testimony by two different witnesses could be a discovery violation of any kind. (2d Mem. at 9–10.) Such a situation is hardly novel, let alone sanctionable. Clark has not alleged or demonstrated that this purported discrepancy resulted from any bad faith, and we thus cannot issue sanctions.

### 2. Item 8

Clark alleges in Item 8 that Defendants created a new, restored account in 2009 for purposes of running a FINDE search to comply with Judge Kobayashi's October 21, 2009 discovery order. (*Id.* at 13–14.) She contends that the new account contained only the same information as the existing account, rendering the search "a useless exercise designed not to capture any new information." (*Id.* at 14.) She further notes that Defendants neglected to produce the FINDE search results until May 2010, six months later. (*Id.*)

Although we can understand Clark's suspicion upon realizing that a new account had been created in 2009, Defendants' explanation undermines any implication of bad faith. According to Defendants, Mary Ellen Keys sought to have the account restored to the master file so that Clark would not have to travel to Kansas City to review the results. (2d Resp. at 22–24; Keys 11/22/10 Decl. ¶¶ 40–43.) Keys then learned that restoration of the file would actually require manually inputting the stored information into IDRS, thus apparently creating a new account with old information. (2d Resp. at 22–24; Keys 11/22/10 Decl. ¶¶ 40–43.) She abandoned these efforts because Clark wanted to view the information as it had been originally

stored, not in a recreated form. (2d Resp. at 22–24; Keys 11/22/10 Decl. ¶¶ 40–43.) Defendants never fully restored the account and did not later conduct the FINDE search on any new account. (2d Resp. at 22–24; Keys 11/22/10 Decl. ¶¶ 40–43.)

Clark's argument on Item 8 is undeveloped, and it is not clear what harm she claims to have suffered, particularly in light of Defendants' clarification. For example, Clark does not explicitly contend that she was deprived of the correct FINDE results. Indeed, Clark did not dispute at the summary judgment stage that she had received the FINDE search results, and she did not revive this issue at oral argument. (*See, e.g.*, Pl.'s MSJ Reply at 13, Dkt. No. 219.) She has not articulated how the FINDE search was supposed to work and what went wrong, or how this conduct might constitute a violation of the October 21, 2009 order. Although we do not condone Defendants' six-month delay in disclosing the FINDE results to Clark, she has not even attempted to explain how that delay disadvantaged her. (*See* 2d Mem. at 14.) Based on the arguments and evidence before us, we cannot find that Defendants engaged in this conduct in bad faith, or that their actions prejudiced Clark.

### 3. *Item 1*

In Item 1, Clark claims that Defendants failed to provide her with the unredacted results of the original July 2009 NAMEE search with the term "Estate of Lewis M. Watson 606." (2d Mem. at 4–5.) That search produced ten pages, with a total of forty-six results; however, the actual result for the Estate did not appear until the third page, as the eleventh entry. (*Id.*) Defendants initially provided Clark with a redacted copy of the search results, to avoid any potential § 7431 liability. Because NAMEE search results are displayed by order of relevance, however, Clark sought to review the unredacted results to see what information might have

appeared in the first ten entries. Judge Kobayashi authorized such review, and Defendants permitted Clark to inspect the search results in Honolulu on October 13, 2010.[11]

Clark contends, however, that she was not shown the unredacted results of the original July 2009 search at the Honolulu IRS office, as evidenced by the fact that the first ten entries were wholly unrelated to the Estate. (2d Mem. at 4–5.) Because the results are sorted by similarity of the match, Clark expected to receive ten search results closely connected in some way to the Estate. Instead, she found ten references to apparently unrelated taxpayers. (*Id.*; *see* Watson 11/16/10 Decl. ¶ 4.) Several of those results had no match of any word included in the search string. (Watson 11/16/10 Decl. ¶ 4.) Clark thus asserts that Defendants withheld the actual unredacted results. (2d Mem. at 5.)

Defendants stress that the date of the search and the search string appear at the top of each page of the results, demonstrating its authenticity. We have reviewed the search results in camera and confirm that they bear this identifying information.[12] Clark obviously hoped the search results would reveal third parties with some connection to the Estate, which might enable her to identify the person(s) who communicated with the IRS as alleged in her § 7431 claim. While the search results failed to do so, Clark has offered no reason for us to conclude that Defendants fabricated this document or withheld information. In short, that the search results were not helpful to Clark does not prove that they were not the search results at all. As

---

[11] Defendants contend that they fully complied with Judge Kobayashi's order by allowing Clark to inspect the NAMEE results far earlier, on January 15, 2010. (*See* 2d Resp. at 9; Klimas 10/28/10 Decl. ¶ 5, Dkt. No. 260-3.) We need not address this aspect of the dispute.

[12] As per the request of the parties, we will file the disputed search results discussed herein as part of the record, under seal.

Defendants point out, several of the first ten results included possible phonetic matches for "Lewis." (2d Resp. at 10–1; Klimas 11/23/10 Decl. ¶¶ 7–9.) Given the evidence before us, it seems more likely that the search simply did not sort the results perfectly than that Defendants showed Clark altered documents in flagrant disregard of a court order. Ultimately, Clark has not demonstrated Defendants' bad faith in production of the July 2009 results, and we cannot sanction Defendants on speculation alone.

### 4. Item 2

In her remaining sanctions request, Clark challenges several of Defendants' NAME searches, which the IRS ran pursuant to our summary judgment order. We consider each of Clark's assertions below, based on the briefs and evidence before us, including our in camera inspection of the disputed search results.

#### a. Reformulated NAMEE search

Clark contends that Defendants failed to perform the court-ordered NAMEE search of "Estate of Lewis M. Watson" without the exact match feature and zip code limiter. (2d Mem. at 6–7.) At her October 13, 2010 review of various search results, Clark discovered that the NAMEE results pertained instead to a search for "Watson Lewis M Estate." (*Id.*) According to Clark, the reformulated search string did not capture the most relevant results. (*Id.*)

In their response, Defendants explain that they did in fact attempt the NAMEE search of "Estate of Lewis M. Watson," as well as a NAMEE search for "Lewis M. Watson." (2d Resp. at 12–13; Keys 11/22/10 Decl. ¶¶ 11–13.) Both searches produced 68,343 possible matches, a set of results so large that IDRS could not display them. (2d Resp. at 12–13; Keys 11/22/10 Decl. ¶¶ 11–13.) Defendant then conducted the "Watson Lewis M Estate" search and provided those

results to Clark. (2d Resp. at 12–13; Keys 11/22/10 Decl. ¶¶ 11–13.)

We will not exercise our discretion to sanction Defendants given their good faith efforts to run the desired NAMEE search, which was unsuccessful. We add, however, that this misunderstanding could have been avoided if Defendants had adequately communicated their search process with Clark. Defendants provided her with results for a search entirely different than the search desired, leading her to reasonably suspect that Defendants violated our order. Although this litigation has been hotly-contested, there is no reason for counsel to jointly have let this issue escalate to a sanctions motion.

        *b.*     *NAMEB search*

Clark next argues that Defendants' recent NAMEB searches were obviously "formulated incorrectly" because they failed to generate any matches to the Estate, even though there are two known matches in the database. (2d Mem. at 7.) Notably, Defendants do not counter that the NAMEB system would not have Estate information due to retention schedules, the scope of the database, or other technical reasons. (2d Resp. at 13; Keys 11/22/10 Decl. ¶¶ 14–16.) Instead, Defendants rely on the search results for entities other than the Estate as proof that the search ran correctly. (2d Resp. at 13; Keys 11/22/10 Decl. ¶¶ 14–16.) For example, the searches found matches such as "Estate of Leta M Watson Deceased" and "Lois L. Watson Estate." (Keys 11/22/10 Decl. ¶¶ 14–16.)

While we might agree with Clark that this reasoning is not entirely satisfying—Defendants never really explain why the NAMEB search turned up nothing on the Estate—no sanction is warranted. Clark has not identified any faults in the search strings or proposed more appropriate terms. Nor has she shown that Defendants' searches were

intentionally misleading or mistaken; indeed the results, which we reviewed, suggest otherwise.

In the absence of bad faith, sanctions are not appropriate.

*c.     NAMEI and NAMES searches*

In addition to the above, Clark takes issue with the NAMEI and NAMES searches conducted by Defendants in September 2010. (2d Mem. at 7–8.) She contends that Defendants' search terms "were deliberately designed to fail." (*Id.* at 8.) Clark correctly asserts that the NAMES search was not run in the precise manner prescribed by the Internal Revenue Manual.[13] (*Id.*)

For their part, Defendants again point out that the searches returned results that prove the terms worked. For example, the NAMEI search produced entries such as "Leota E. Watson Estate" and "Vernon E. Watson Estate." (Keys 11/22/10 Decl. ¶ 18.) The NAMES search generated results including "Angela Watson Estate" and "Eleanora S. Watson Estate." (*Id.* ¶ 22.) According to Defendants, if information concerning the Estate existed in these databases, "the results that the searches did yield establish that the information input into the NSF would have resulted in finding that information." (*Id.* ¶¶ 19, 23.) So it would seem.

More importantly, Defendants clarify that the NAMEI and NAMES search functions pertain only to Individual Master File taxpayers, not Business Master File taxpayers, like the Estate. (*Id.* ¶¶ 20, 24.) Accordingly, even the broadest and most ideal search terms in these two databases would not have returned any results for the Estate. (2d Resp. at 13–14.) We find no bad faith, or prejudice to Clark, under these circumstances and decline to sanction Defendants.

---

[13] The I.R.M. does not similarly support her claim that the NAMEI search was incorrectly formatted. *Compare* I.R.M. § 2.3.60.40 *with* 2d Mem. at 7–8.

## CONCLUSION

For the reasons set forth above, we deny Plaintiff's motions for sanctions (Dkt. Nos. 253 & 273). It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: January 7, 2011
Chicago, Illinois